IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DEMETRIUS LAWANA ABRO, | ) | |
| #172755, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.:  2:12-CV-583-WHA |
| | ) | [WO] |
| FRANK ALBRIGHT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Plaintiff, a state inmate incarcerated at the Birmingham Community Work Release Center in Birmingham, Alabama, challenges the constitutionality of actions taken against her during her incarceration at the Tutwiler Prison for Women.  She contends Defendants subjected her to retaliatory conduct after she filed a habeas corpus petition against them in state court challenging the imposition of a disciplinary infraction she received for assault on another inmate. Name as defendants are Warden Frank Albright and Sergeant Napoleon Goodson, Jr. Plaintiff requests $25,000.00 in damages against each defendant.[1]  *Doc. No. 14*.

Defendants filed a special report, a supplemental special report, and supporting evidentiary materials addressing Plaintiff's claims for relief. In these document, Defendants deny they acted in violation of Plaintiff's constitutional rights.  *Doc. Nos. 21, 30*.  The court granted Plaintiff an opportunity to file a response to Defendants' report, as supplemented, and Plaintiff

---

[1] In accordance with the prior proceedings and orders of the court, this action is proceeding on the amended complaint filed by Plaintiff on December 26, 2012. *See Doc. Nos. 12, 14*.

filed a response to the special report. *Doc. Nos. 22, 23, 27*.  The court deems it appropriate to treat Defendants' reports as a motion for summary judgment. *See Doc. No. 22*.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the nonmoving party has failed to present evidence to support some element on which it bears the ultimate burden of proof.  *Id*. at 322-324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to her case exists.  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required [by citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary

judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. To survive Defendants' properly supported motion for summary judgment, Plaintiff must produce "sufficient [favorable] evidence" which would be admissible at trial supporting her claims for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (internal citations omitted). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs likewise cannot create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond his own conclusory allegations challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to her case and on which the plaintiff will bear the burden of proof at trial, summary judgment is

due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations omitted).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and establishes the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court

show there is no genuine dispute as to a requisite material fact.);   *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  Here, Plaintiff fails to demonstrate a requisite genuine dispute of material fact against Defendants to preclude summary judgment. *Matsushita*, *supra*.

## II.  DISCUSSION

*A. First Amendment Retaliation Claim*

Plaintiff maintains that the conduct and/or actions taken by Defendants regarding the claims presented against them were motivated by their desire to retaliate against her for her filing a habeas corpus petition in state court in March of 2012 in which she challenged the validity of a disciplinary infraction she received for assault on another inmate.  A claim that a plaintiff was penalized for exercising a constitutional right is properly considered under the First Amendment. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir.1999) (*en banc*). The First Amendment protects inmates from retaliation by prison officials for filing administrative grievances and lawsuits. *Wright v. Newsome*, 795 F.2d 964 (11th Cir.1986); *Farrow v West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "The gist of a retaliation claim is that a prisoner is penalized for exercising a right of free speech."  *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989);

*Farrow*, 320 F.3d at 1248. Conclusory allegations of retaliation, however, cannot demonstrate the existence of each element requisite to establishing retaliation. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1266 (11th Cir. 2009), *overruled on other grounds by Mohamad v. Palestinian Auth.*, ___U.S. ___, 132 S.Ct. 1702 (2012), (stating that "in testing the sufficiency of the plaintiff's allegations, we do not credit ... conclusory allegations as true"). *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations.").

In ruling on an inmate's First Amendment retaliation claim, courts use a burden shifting analysis. *Moton v. Cowart*, 631 F.3d 1337, 1341–42 (11th Cir. 2011). Plaintiff must establish three elements: "(1) 'h[er] speech or act was constitutionally protected'; (2) 'the defendant's retaliatory conduct adversely affected the protected speech'; and (3) 'there is a causal connection between the retaliatory actions and the adverse effect on speech.'" *Id.* at 1341 (quoting *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)); *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X*, 175 F.3d at 397. Regarding the causation prong a court "asks whether the defendants were subjectively motivated" by Plaintiff's protected act. *Smith*, 532 F.3d at 1278. If Plaintiff shows that "h[er] protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Moton*, 631 F.3d at 1341–42 (quoting *Smith*, 532 F.3d at 1278). Upon production of evidence demonstrating a legitimate reason for the conduct and/or actions in question, Plaintiff, who has the ultimate burden of proof, must show there is a genuine dispute of material fact concerning Defendants' defense. *See Osterback v. Kemp*, 300 F.Supp.2d 1238, 1254 (N.D. Fla. 2003). Because any adverse action taken against a prisoner by a prison official can be characterized by the inmate as a retaliatory act, federal courts must "carefully scrutinize" retaliation claims brought by prisoners challenging adverse actions of

6

correctional personnel, *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), and "approach prisoner claims of retaliation with skepticism and particular care. *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). This is [necessary because prisoners']  . . . claims of retaliation are . . . easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

### i. Defendant Goodson

Plaintiff alleges that Defendant Goodson cursed her and placed her in segregation in retaliation for the lawsuit she filed against him in March 2012. To support her claim, Plaintiff states that on April 7, 2012, she was on her way to eat when Defendant Goodson asked her to produce a gold slip verification for a special needs meal.[2] When she showed Defendant Goodson the verification slip, he threw it on the ground, cursed at her, and ordered her back to her dorm. Defendant Goodson's behavior, Plaintiff claims, was a "retaliatory act resulting from a writ of certiorari [she] filed" against Defendant Goodson which was served on him on March 30, 2012. *Doc. No. 14*.

Defendant Goodson asserts that at no time did he attempt to retaliate or harass Plaintiff. He indicates that on or around April 5, 2012, Plaintiff attempted to enter the dining hall during special needs feeding. He asked to see Plaintiff's special diet gold slip. In a hostile tone Plaintiff responded that she did not have it and that it was in the dorm. Defendant Goodson directed Plaintiff to return to her dorm for her gold slip and then return to the dining hall if she wanted to

---

[2] Plaintiff states she is an insulin dependent diabetic. *Doc. No. 14* at 5.

eat with the special needs inmates. Otherwise, Defendant Goodson informed Plaintiff she would have to eat when her dorm was called for feeding.  Plaintiff became angry with Defendant Goodson. Speaking in a loud and disrespectful manner, Plaintiff told the correctional officer "man, I am gonna eat!" Plaintiff did not produce her gold slip and was, therefore, given another opportunity to eat with her assigned dorm when it was called. Defendant Goodson asserts that Plaintiff refused and became insubordinate for which she received a disciplinary for violating Rule 57 - insubordination. *Doc. No. 21, Exh. A*.

Plaintiff disputes Defendant Goodson's account of events maintaining that she produced her gold slip when Defendant Goodson asked to see it, that she was not insubordinate to the guard, and claims he never gave her another opportunity to eat when her assigned dorm was called for feeding. Rather, Plaintiff states that after initially sending her back to her dorm, Defendant Goodson radioed another officer to pack up Plaintiff's belongings to escort her to the mental health segregation unit. Plaintiff asserts that Defendant Goodson issued her a disciplinary infraction for insubordination but states no hearing was ever held nor is there any record of the infraction. *Doc. No. 23*.

Taking as true Plaintiff's contention that Defendant Goodson, in retaliation for Plaintiff filing a state court civil action against him, subjected her to harsh and intimidating language, such action does not rise to the level of adverse action under the facts because, without more, there is no evidence it would be sufficient "to deter a person of ordinary firmness" from exercising her First Amendment rights. *See Bennett*, 423 F.3d at1252 (internal citations and quotation marks omitted)  ("something more than the mere retaliatory act is necessary to give rise to an actionable claim ... [and] government officials should not be liable when the plaintiff is unreasonably weak-willed or suffers only a *de minimus* inconvenience to her exercise of First

Amendment rights."). Regarding Defendant Goodson's issuance of an unjustified disciplinary infraction for insubordination, Plaintiff admits there is no record of an infraction because it was dismissed ("disappeared"). "A single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action." *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir.2009) (citation omitted). To hold Defendant Goodson responsible for a retaliation claim stemming from a disciplinary infraction dismissed "trivializes the First Amendment" because plaintiff sustained no injury. *See Id*.; *see also Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Defendant Goodson is entitled to summary judgment on Plaintiff First Amendment retaliation claim.

### ii. *Defendant Albright*

Plaintiff also filed her state habeas petition against Defendant Albright. After being served with the lawsuit on March 30, 2012, Plaintiff alleges the Warden retaliated against her initially on April 5, 2012, when he relieved her from her state paid job in the canteen, and again on April 6, 2012, when he yelled at her and threatened her with segregation after observing her pushing a laundry cart with another inmate. Defendant Albright threatened to lock her up if she did not get away from the cart. Plaintiff further claims that on April 20, 2012, she asked Defendant Albright about getting her canteen job back, and he told her that would not be a good idea.  He, instead, gave her a job responsibility in the dining room. Subsequently, on May 3, 2012,  Defendant Albright questioned her presence in the dining room and she reminded him he had given her a job in that location. Plaintiff contends that Warden Albright responded with a loud tone and harsh words claiming Plaintiff was being untruthful but even had he given her another job, such action was designed to get Plaintiff "out of his face."  Defendant Albright then

told Plaintiff to go to the job board which she did on May 14, 2012. *Doc. No. 14. See also Doc. No. 23 (including Abro and Dennis Affidavits)*.

Defendant Albright denies engaging in retaliatory conduct regarding Plaintiff. He removed Plaintiff from her canteen job due to security reasons. After Plaintiff later approached Defendant Albright requesting another job placement, the Warden informed her she could dust the room dividers and that he would get back to her regarding her job request at a later date and time and, meanwhile, he would send her name to the job board. Defendant Albright also concedes that he stopped Plaintiff after observing her pushing a laundry cart that could have contained contraband. Knowing Plaintiff did not need to have direct access to two dormitories restricted from having items from other parts of the institution and which would be considered contraband, Defendant Albright had the laundry cart which Plaintiff had been pushing searched. The Warden informed Plaintiff that contraband, when found on her cart, would result in disciplinary action. Defendant Albright affirms Plaintiff is a good worker but his decision to remove Plaintiff from certain jobs stemmed from his concern she represented a security risk to the institution. Specifically, Defendant Albright received information from a confidential informant that Plaintiff was removing items from the canteen and selling them in the restricted dormitory. Upon checking the canteen work roster of inmates assigned to that area, Plaintiff's name was not listed as authorized to work in the canteen.[3] Her removal from the canteen job was, therefore, also effected due to this security breach. *Doc. No. 21, Exh. B*; *Doc. No. 30, Exh. 1*.

Plaintiff maintains that Defendant Albright "did not have substantial evidence to remove [her] for security reason[s] other than retaliation" because he previously had recommended her

---

[3] Defendant Albright states that prison staff who are not authorized to assign Plaintiff to a state job would assign her to jobs she requested but which he believed were not good job assignments for her from a security perspective. *Doc. No. 21, Exh. B*.

for transfer to a work release center, and she formerly worked for him as a gaterunner "without any security reasons." *Doc. No. 23*. Plaintiff acknowledges, however, that he gave her other jobs and/or work assignments, including working in the dining room, and he also suggested that she meet with the job board for another job placement. *Id*. Plaintiff does not deny that she was not authorized to work in the canteen.

Plaintiff's filing of a civil case in the Circuit Court for Elmore County, Alabama, constitutes protected conduct under the First Amendment. Regarding the second element, the court finds Plaintiff fails to indicate what deterrence Defendant Albright's conduct about which she complains had on exercising her First Amendment rights. *See Bennett*, 423 F.3d at 1250 (internal citations omitted) ("plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from exercise of First Amendment rights"). "A prisoner does not automatically cast doubt upon an institutional decision, nor is the decision 'subject to exhaustive challenge,' solely because [s]he was engaged in a First Amendment right." *Adams v. James*, 784 F.2d 1077, 1082 (11th Cir. 1986); *Adams v. James*, 797 F. Supp. 940, 949 (M.D. Fla.1992)." *Cranford v. Hammock*, 2010 WL 916031 *8 (N.D. Fla. 2010).

Here, Defendant Albright affirms that he removed Plaintiff from her canteen job. However, he has shown a legitimate reason for doing so. Plaintiff has not come forward with evidence to dispute that her removal from the canteen job was done out of retaliation rather than because of legitimate institutional security concerns. She has submitted no direct evidence that her lawsuit was the motivating factor in her removal from the canteen job, and nothing in the record suggests that her removal from this job post by Defendant Albright was a mere pretext to punish her for filing a lawsuit. Defendant Albright has submitted admissible evidence which

reflects that his actions towards Plaintiff were not predicated upon a retaliatory motive but over concerns for institutional security. Moreover, the evidence reflects that the Warden suggested alternative institutional jobs to Plaintiff including encouraging her to seek eligible job opportunities with the job board which she did. Plaintiff also engaged in other work responsibilities around the institution after her removal from the canteen job.

Plaintiff's encounters with Warden Albright support no causal link between her First Amendment activity and the Warden's alleged retaliation. Her conclusory allegation that Defendant Albright had no reason to remove her due to security concerns and simply retaliated against her for filing a lawsuit are insufficient and unsupported by the record evidence. Because Plaintiff's allegations against Defendant Albright fail to support a First Amendment retaliation claim, he is entitled to summary judgment.

*B. Eighth Amendment Deliberate Indifference Claim*

Plaintiff  alleges that Defendant Goodson subjected her to cruel and unusual punishment when he denied her a special needs meal and ordered her to return to her dorm.  Specifically, Plaintiff contends that missing the special needs meal resulted in "severe complications to [her] health" because she has diabetes and her blood pressure became unstable causing her to become fearful of a medical complication. *Doc. No. 14*.

The court understands Plaintiff's claim to allege that Defendant Goodson acted with deliberate indifference to her serious medical needs. To prevail in a suit based on an Eighth Amendment claim about medical attention, a prisoner must show, at a minimum, that prison or medical officials  acted with deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985). A medical need is serious if the failure to treat the inmate's condition could result in additional significant

injury or the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. A correctional officer may be held liable under the Eighth Amendment for acting with "deliberate indifference" to inmate health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 837. "When officials become aware of a threat to an inmate's health and safety, the eighth amendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990). Deliberate indifference is more than mere negligence, but less than acts or omissions taken to cause harm. *Farmer* 511 U.S. at 837. It is enough for Plaintiff to show that Defendant knew of and disregarded an excessive risk to her health. *Id*. However, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id*. at 838.

At most, Plaintiff claims she feared a medical complication from missing a meal but otherwise fails to identify what, if any, specific injury she suffered as a result. Further, Plaintiff fails to demonstrate that Defendant Goodson knew of and disregarded "an excessive risk to [her] health or safety." *Farrow*, 320 F.3d at 1245 (citation and internal quotation marks omitted). That is, she has not shown that Defendant Goodson had "subjective knowledge of a risk of serious harm," that he disregarded that risk, and that he did so "by conduct that is more than mere negligence." *Id*. (citation and internal quotation marks omitted).

The record here is devoid of evidence that Defendant Goodson had subjective knowledge of, and disregarded, a risk of serious harm to Plaintiff based on her diabetic condition. According to Plaintiff, after Defendant Goodson ordered her back to her dorm he immediately directed another officer to pack up Plaintiff's belongings. The guard then entered Plaintiff's dorm and

escorted her to the mental health segregation unit. Plaintiff does not indicate that she informed Defendant Goodson she was experiencing unstable blood pressure at the time or that he had any reason to believe that she was experiencing an issue related to her diabetic condition. *See Estelle*, 429 U.S. at 104-105. Because Plaintiff has failed to demonstrate that Defendant Goodson knew that she faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it, he is entitled to summary judgment on this claim.

*C. Verbal Abuse Claim*

To the extent Plaintiff seeks to assert an independent claim of verbal abuse, threats, and harassment against Defendants, such claim entitles her to no relief. Derogatory, demeaning, profane, threatening, or abusive comments made by an officer to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation. *Edwards v. Gilber*t, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (mere verbal taunts, despite their distressing nature, directed at inmate by jailers do not violate inmate's constitutional rights); *Ayala v. Terhune*, 195 Fed. Appx. 87, 92 (3rd Cir. 2006) ("[A]llegations of verbal abuse, no matter how deplorable, do not present actionable claims under § 1983."); *Sims v. Hickok*, 185 F.3d 875 (10th Cir. 1999) (table) (district court's summary dismissal of inmate's complaint for failure to state a claim appropriate because officer's insults and racial slurs did not amount to a constitutional violation); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (verbal abuse establishes no cause of action under § 1983); *Gaul v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (Eighth Amendment trivialized by assertion that mere threat constitutes a constitutional wrong and threatening to commit an act prohibited by the Constitution is not equivalent to doing the act itself); *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (mere name-calling did not violate

inmate's constitutional rights). Accordingly, Defendants are due to be granted summary judgment on Plaintiff's verbal abuse claim.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment (*Doc. Nos. 21, 30*) be GRANTED;

2. Judgment be ENTERED in favor of Defendants;

3. This case be DISMISSED; and

4. Costs be taxed against Plaintiff.

It is further

ORDERED that **on or before August 7, 2015**, the parties may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised this Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981.

Done, this 23rd day of July 2015.

 /s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE